**IN THE COURT OF APPEALS OF IOWA**

No. 21-1422
Filed January 12, 2022

**IN THE INTEREST OF C.G. and S.H.,**
**Minor Children,**

**A.L., Mother,**
     Appellant,

**T.H., Father,**
     Appellant.

_____

        Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic,

District Associate Judge.


        A mother and father separately appeal the termination of their respective

parental rights.  **AFFIRMED ON BOTH APPEALS.**


        Becky E. Wilson of Elwood, O'Donohoe, Braun, White, LLP, Charles City,

for appellant mother.

        Mark A. Milder, Denver, for appellant father.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

        Cynthia Schuknecht of Noah, Smith, Schuknecht & Sloter, P.L.C., Charles

City, attorney and guardian ad litem for minor children.


        Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**MAY, Judge.**

A mother and father separately appeal the termination of their respective parental rights to their two children, C.G.[1] and S.H. On appeal, both parents argue the statutory grounds authorizing termination were not met because the State failed to make reasonable efforts towards reunification and termination is not in the children's best interests due to their close bond with each parent. The mother also requests additional time to work toward reunification. We affirm.

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We consider: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. Then we address any additional claims raised by the parents. *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

Both parents challenge the statutory grounds authorizing termination of their respective parental rights. Here, the juvenile court terminated the mother's

---

[1] When questioned by the juvenile court, C.G. introduced himself as C.H.

rights to the children under Iowa Code section 232.116(1)(f) and (*l*) (2021) and the father's rights to the children under section 232.116(1)(f).  When the juvenile court terminates under multiple statutory grounds, as occurred here with respect to the mother, we may affirm on any ground satisfied.  *In re J.D.*, No. 21-0391, 2021 WL 3379037, at *1 (Iowa Ct. App. Aug. 4, 2021).  With respect to the mother, we choose to address paragraph (f), which also served as the statutory basis for terminating the father's parental rights.  Paragraph (f) authorizes termination when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve months of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).  Both parents limit their challenges to the forth element, whether the children could be returned to their respective homes.  This element is satisfied when the State establishes the children cannot be safely returned to the parent at the time of the termination hearing*.  In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

We agree with the juvenile court that the children could not be safely returned to either parent.  The mother has unresolved substance-abuse issues.  She has not consistently engaged in substance-abuse therapy.  During the life of this case, the mother has tested positive for methamphetamine and THC.  And she has also missed at least ten drug screens.  We presume these missed tests would have been positive for illegal substances.  *See In re R.A.*, No. 21-0746, 2021 WL

4891011, at *1 (Iowa Ct. App. Oct. 20, 2021) (collecting cases noting we presume missed drug screens would have been positive). The mother has also failed to consistently engage in mental-health treatment. And at times she appears untethered to reality. For example, the mother reported to the Iowa Department of Human Services (DHS) that the children's placement made C.G. "eat his puke" and S.H. "ate eleven pieces of pizza while at their visit," insinuating placement does not feed her adequately. The mother then said she was going to meet with Governor Kim Reynolds about this case. When DHS investigated, the children contradicted the mother's claims. Taken together, the unresolved substance-abuse issues and mental-health issues present ongoing barriers to reunification.

But the mother contends any barriers to reunification are due to DHS failing to make reasonable efforts towards reunification. We consider any reasonable-efforts challenge when determining whether the State established the statutory grounds authorizing termination. We recognize "[t]he State must show reasonable efforts as part of its ultimate proof the child[ren] cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). We require parents to alert the court of the alleged deficiencies prior to the termination hearing. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate."); *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS'[s] response to a request for other services, the parent must come to the court and present this challenge."); *In re O.T.*, No. 18-0837, 2018 WL 3302167, at *2 (Iowa Ct. App. July 5, 2018) ("The failure to request different or additional . . . services in the juvenile court precludes [the parent's] challenge to

the services on appeal."); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (stating the parent has an obligation to demand other, different, or additional services prior to the termination hearing or the issue is considered waived for appeal).

> This requirement allows the court to take corrective action early on so that the case does not languish on and permanency can be reached within a reasonable time for the children. Doing so obviates the need for additional time to address service deficiencies only identified at the termination hearing when a family is on the precipice of termination.

*In re E.H.*, No. 21-0467, 2021 WL 2709486, at *2 (Iowa Ct. App. June 30, 2021).

Here, the mother filed a motion for reasonable efforts just four days before the first day of the termination hearing. This late filing has the same practical impact as when a parent waits until the termination hearing to raise a reasonable-efforts challenge—by the time of the filing there was not enough time remaining to address the alleged deficiencies. *See id.* We note the mother's motion focused on the amount of contact (or lack thereof) with the children due to the placement's distance from her home, COVID-19 restrictions, and the limited number of visitation supervisors available. None of these purported issues were recent developments that the mother could not have raised in a timely manner. Moreover, we note the barriers to reunification that remained at the time of the termination hearing had nothing to do with her level of contact with the children. Instead the remaining barriers were of her own doing because she failed to meaningfully address her mental-health and substance-abuse issues.

So with respect to the mother, we conclude the State established a ground for termination. Likewise, we also conclude the children could not be safely

returned to the father's care. When questioned at the termination hearing, C.G. explained he did not like being around the father due to the father's history of abuse—both verbal and physical. C.G. explained that father would "hit [him] in the head with, like stuff, he's pushed [C.G.] over a couch and stuff like that." When faced with visits with reduced supervision, both children informed their therapist during individual therapy that they were afraid to have unsupervised visitation with their father due to his temper and past violence. Both children also expressed their fears to a care provider and the social worker. C.G. asked for the visits to be supervised and requested they have a safety plan as well. And the father has a history of aggressive behavior when interacting with caseworkers. For example, during an inspection of the father's home, he followed the caseworkers around saying "get it done girl." He "obnoxiously clapped his hands" at the workers and then started snapping his fingers at them. He then told a worker to "get the fuck—get out of my room." Given the father's aggression towards the caseworkers as they merely attempted to inspect the father's home, as well as the children's genuine fears of violence based on past incidents, we conclude the children could not be safely returned to the father's home.

But, like the mother, the father contends barriers to reunification only remain because DHS failed to make reasonable efforts toward reunification. He contends that, after February 2021, DHS fell short in three respects by permitting the children to choose not to attend visits, reducing his number of visits, and requiring the father to supply a visitation supervisor if he wanted additional visits. But from our review of the record available to us, we conclude the father never brought these concerns

before the juvenile court.[2]  A May permanency review order stated that family therapy was requested as an additional service and the mother requested an evaluation of the children.  But it made no mention of the father requesting different visitation services.  And between February and the termination hearing, there were no other hearings in which the father could have verbally challenged the services provided.  Nor did the father file a written motion for reasonable efforts.  While the father did file a motion to direct visitation, he filed it after the termination hearing.[3]  To the extent he intended that motion to serve as a motion for reasonable efforts, it was too late.  *See A.A.G.*, 706 N.W.2d at 91 (requiring a parent to "demand other, different, or additional services prior to a . . . termination hearing").  So the father's reasonable efforts challenge is not preserved for our review.

So with respect to the father, we conclude the State established a ground for termination.  Our first step is complete as to both parents.

Next, we address steps two and three in tandem.  Step two centers on the children's best interests.  *See* Iowa Code § 232.116(2).  When making a best-interest determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]."  *In re P.L.,* 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code

---

[2] Our record includes the pleadings, orders, and admitted exhibits in the termination-of-parental-rights and child-in-need-of-assistance cases and the transcript of the termination hearing.  The appellants did not provide this court with any other transcripts.  So our understanding of what occurred at prior hearings is based on the juvenile court's related orders.

[3] The father filed the motion on September 15, and the termination hearing took place over three days, August 12, 19, and 27.

§ 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41. Step three permits the court to apply permissive exceptions to forgo termination in certain circumstances. *See* Iowa Code § 232.116(3). However, the burden of establishing an exception rests with the parent. *See A.S.*, 906 N.W.2d at 476.

Here, both parents ask us to conclude termination is not in the children's best interests and apply an exception to termination due to their respective bonds with the children. *See* Iowa Code § 232.116(3)(c). Because we think termination of both parents' rights is in the children's best interests, we decline to apply a permissive exception. *See id.* (permitting the court to forgo termination due to the parent-child bond only when it is so strong that termination would be "detrimental to the child"). The children are in desperate need of permanency. The children's therapist reported both children's behavior has regressed as this case has continued on. As the children's therapist said, "Trauma can be reframed and processed, but not while survival mode is still engaged." Until these children reach permanency, they will not be able to process the trauma inflicted on them by the parents. They can best achieve permanency through termination. So we think termination of both parents' rights is in the children's best interests.

Finally, we address the mother's request for additional time to work toward reunification. The juvenile court *may* defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal

of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). The mother suggests additional time may be needed to "ensure the children feel secure and are no longer hesitant to be relocated," but she does not identify how additional time would remedy her own deficiencies. And the juvenile court already granted this family additional time to work toward reunification back in December 2020; yet the mother failed to make any meaningful progress since that time. We do not believe things would be any different if we gave her yet another six months now. So we decline to grant the mother additional time.

**AFFIRMED ON BOTH APPEALS.**